UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 North Main Avenue<br>Tucson, AZ 85701,<br><br>    Plaintiff,<br><br>        v.<br><br>SALLY M. R. JEWELL,<br>Secretary of the Interior,<br>U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC  20240,<br><br>    and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street NW<br>Washington, DC  20240,<br><br>    Defendants. | Civil No: 15-00229<br><br><br><br><br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

INTRODUCTION

1. Plaintiff Center for Biological Diversity ("Center") brings this action under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), to challenge the Secretary of the Interior's ("Secretary") and the U.S. Fish and Wildlife Service's ("FWS") (collectively, "Defendants" or "FWS") failure to make mandatory findings on whether three, highly-imperiled species should be listed as endangered or threatened under the ESA.  16 U.S.C. § 1533(b)(3)(B). These species are the sickle darter (*Percina williamsi*), trispot darter (*Etheostama trisella*), and yellow lance (*Elliptio lanceolata*) – all of which are experiencing steep population declines and ongoing threats to their existence.

2. On April 20, 2010, the Center submitted a petition to list the sickle darter, trispot

darter, and yellow lance as "endangered" or "threatened" pursuant to the ESA.  FWS issued "90-day findings" in response to the Center's petition on September 27, 2011, concluding that "the petition present[ed] substantial scientific or commercial information indicating that listing may be warranted."  16 U.S.C. § 1533(b)(3)(A); 76 Fed. Reg. 59,836 (Sept. 27, 2011).  FWS was required to follow with "12-month findings" as to whether listing these species is "warranted" by April 20, 2011, yet it has failed to make these requisite findings to date.  16 U.S.C. § 1533(b)(3)(B).  Defendants are therefore in violation of the ESA.  *Id.*

3. To remedy these violations, the Center seeks declaratory relief to affirm that Defendants are in violation of the ESA and Administrative Procedure Act ("APA") by failing to make 12-month findings on the Center's petition to list the sickle darter, trispot darter, and yellow lance; and injunctive relief that establishes a date certain for Defendants to determine if listing these species as endangered or threatened is warranted.  Compliance with the nondiscretionary deadlines of the ESA is necessary to ensure the continued existence of the sickle dater, trispot darter, and yellow lance in the wild.

## JURISDICTION

4. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA's citizen suit provision), 5 U.S.C. § 702 (review of agency action under the APA), and 28 U.S.C. § 1331 (federal question jurisdiction).

5. The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701-706; and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

6. The Center provided 60 days notice of its intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter dated March 14, 2013.  Defendants have not responded to this notice of the Center's intent to sue nor have Defendants

remedied the alleged violations. Therefore, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

## VENUE

7. The United States District Court for the District of Columbia is the proper venue for this action pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). Defendants' headquarters are located within this district, and a substantial part of the events giving rise to the Center's claim occurred in this district.

## PARTIES

8. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation that is incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States, including Arizona, New Mexico, California, Nevada, Oregon, Washington, Alaska, Minnesota, Vermont, Florida, and Washington, D.C. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has over 50,000 members and more than 850,000 online supporters. The Center and its members are concerned with the conservation of imperiled species, including the sickle darter, trispot darter, and yellow lance.

9. The Center has members who visit areas where the sickle darter, trispot darter, and yellow lance are known to still occur. The Center's members use these areas for observation of these species and other wildlife; for research; nature photography; aesthetic enjoyment; and recreational, educational, and other activities. The Center's members derive professional, spiritual, and economic benefits from these species and their habitats. Those members have concrete plans to continue to travel to and recreate in areas where they can observe these species and will continue to maintain an interest in these species and their habitats in the future.

10. In addition to submitting petitions to list these species under the ESA, the Center and its members have participated in conservation efforts. For example, the Center has campaigns to protect biodiversity in the southeastern United States and to raise awareness about the environmental impacts from human activities, including impacts to imperiled species. These campaigns would help the species at issue in this case.

11. The Center's conservation efforts are prompted by the concern that the sickle darter, trispot darter, and yellow lance are at serious risk of extinction. Defendants' failure to comply with the ESA's nondiscretionary deadline for issuing 12-month findings on these species deprives them of statutory protections that are vitally necessary to their survival and recovery. Until these species are protected under the ESA, the Center's interest in their conservation and recovery is impaired. Therefore, the Center's members and staff are injured by Defendants' failure to make a timely determination as to whether listing these species is warranted, as well as by the ongoing harm to the species and their habitats in the absence of such protections. The injuries described above are actual, concrete injuries presently suffered by the Center and its members, and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction, and the relief sought herein – an order compelling listing decisions for these species – would redress these injuries. The Center and its members have no other adequate remedy at law.

12. Defendant SALLY M.R. JEWELL is the Secretary of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing and critical habitat decisions. Secretary Jewell is sued in her official capacity.

13. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency

within the Department of the Interior that is charged with implementing the ESA for most terrestrial species as well as ensuring prompt compliance with the ESA's mandatory listing deadlines.

## LEGAL BACKGROUND

14. The ESA is a comprehensive federal statute which declares that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species …. " *Id.* § 1531(b).

15. To this end, section 4 of the ESA requires the Secretary to protect imperiled species by listing them as either "endangered" or "threatened." *Id.* § 1533(a). A "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

16. The ESA's conservation measures apply only after the Secretary lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." *Id.* § 1536(a)(2). Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species or incidentally taking listed species without a lawful authorization from the Secretary. *Id.* §§ 1538(a)(1)(B) and 1539. Concurrently with listing, the Secretary must designate the species' critical habitat, which includes areas that are essential to the conservation of the species. *Id.* §§ 1532(5)(A) and 1533(a)(3)(A). Other provisions of the ESA require the

Secretary to "develop and implement" recovery plans for listed species, authorize the Secretary to acquire land for the protection of listed species, and make federal funds available to states to assist in their efforts to preserve and protect listed species.  *Id.* § 1533(f), § 1534, and § 1535(d).

17. To ensure the timely protection of species that are at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or threatened.  The process includes mandatory, non-discretionary deadlines that the Secretary must meet so that imperiled species receive the ESA's substantive protections in a timely fashion.  The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.  The Secretary has delegated responsibility for making these findings to FWS.

18. Upon receiving a listing petition, FWS must "to the maximum extent practicable, within 90-days" make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  *Id.* § 1533(b)(3)(A).  If FWS finds that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

19. If FWS instead determines that a petition does present substantial information indicating that listing may be warranted, then the agency must conduct a full scientific review of the species' status.  *Id*.  Upon completion of this status review, and within 12-months from the date that it receives the petition, FWS must make one of three findings: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present.  *Id.* § 1533(b)(3)(B).

20. If FWS's 12-month finding concludes that listing is warranted, the agency must

6

publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the ESA requires FWS to render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, FWS must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final determination for up to six months in order to solicit more scientific information. *Id.* §§ 1533(b)(6)(A)(i) and 1533(b)(6)(B)(i).

21. Because the ESA does not safeguard a species facing extinction until it is formally listed as endangered or threatened, it is critical that FWS meticulously follow the ESA's listing procedures and deadlines so that such species are protected in a timely manner. Defendants have regularly ignored these statutory procedures and have missed statutory listing deadlines, leading to litigation to correct these deficiencies.

22. On July 12, 2011, the Center and Defendants entered into a comprehensive stipulated settlement agreement that defines Defendants' responsibilities regarding future ESA statutory deadline litigation between these parties. Stipulated Settlement Agreement, *In re Endangered Species Act Section 4 Deadline Litigation – MDL No. 2165*, No. 10-377 (D.D.C. July 12, 2011), ECF No. 42-1.

23. Under the settlement, the Center may file deadline suits addressing up to 10 species, and to obtain remedies from up to three deadline suits, in each fiscal year from 2012 through 2016. If the Center files suits addressing more than 10 species, or obtains remedies from more than three suits in any one of these fiscal years, negotiated deadlines that Defendants must meet under the agreement may be pushed back to 2016. Under the settlement, a "remedy" means a stipulated settlement agreement or judicially-enforceable order requiring the FWS to make any

finding, listing determination, or critical habitat determination for a species before April 1, 2017. The instant complaint is a "deadline suit" as defined in the parties' settlement.

24. During the current fiscal year, the Center has not filed any other deadline suits.

## FACTUAL BACKGROUND

A. <u>Sickle Darter</u>

25. The sickle darter is a slender freshwater fish that inhabits clear flowing streams, pools, and small rivers from the Appalachian Mountains to the upper reaches of the Tennessee River. The sickle darter is closely related to the longhead darter, and scientists only discovered that it is a unique subspecies in 2007. It spends much of its time swimming in river currents and often occurs near woody debris, stream vegetation, or large boulders. Although the sickle darter is common in some years in a handful of streams, its current populations are severely fragmented, and it has been extirpated from several places where it previously was found. Today, the sickle darter is considered extirpated in North Carolina, rare in Virginia, and threatened in Tennessee. The total population size is unknown.

26. The sickle darter is at risk of extinction due to its limited range and degradation to its habitat. The primary threat to the species is turbidity and siltation caused by agriculture and development, which adversely affects reproduction by smothering nests and eggs in gravel shoals. Other threats include toxic pollution and impoundments from dams. No populations receive special management considerations or protections with the exception of one population in the Great Smoky Mountains National Park. NatureServe, a non-profit provider of scientific information to support conservation, classifies the species as imperiled. The International Union for the Conservation of Nature ("IUCN"), which studies and identifies species at risk of extinction, considers it to be vulnerable. The American Fisheries Society, the world's largest

professional society for fisheries scientists, recognizes the species as threatened.

27.     Due to the threats to the sickle darter, on April 20, 2010, the Center submitted a petition to FWS to list the fish as endangered or threatened under the ESA.

28.     On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the sickle darter. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the sickle darter may be warranted. 76 Fed. Reg. 59,836 (Sept. 27, 2011).

29.     The FWS was required to make a 12-month finding as to whether listing the sickle darter is warranted by April 20, 2011, but it has not made this mandatory finding to date, a violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

B.     Trispot Darter

30.     The trispot darter is a small freshwater fish that lives in portions of the upper Coosa River watershed in Alabama, Tennessee, and Georgia, including areas of the Conasauga, Coosawatee, and Oostanaula rivers. The fish occupies slack water when not breeding, but it migrates to spawn in seepage waters, small ditches along pastures, and floodplain forests. This requirement for two distinct but interconnected habitats makes the trispot darter highly sensitive to habitat modification, and impoundments have wiped out the trispot darter from large portions of its historic range. The species was long thought to be extinct in Alabama, but it was recently discovered in protected forestland east of Gadsden, Alabama, near the Georgia border. Today its populations are restricted to limited areas in a few mainstem rivers and a small number of tributary streams.

31.     Primary threats to the trispot darter are habitat loss and degradation, including dams that block access to spawning areas, and dredging and filling activities in small seepage

streams. Other threats include water pollution from agricultural runoff and urban sprawl. NatureServe lists the species as extirpated in Alabama, and "critically imperiled" globally and in Georgia and Tennessee. It is categorized as extinct by the state of Alabama, "endangered" in Georgia, and "threatened" in Tennessee. The American Fisheries Society reclassified the status of the trispot darter from "threatened" to "endangered" in 2008 due to increasing threats to its survival. There currently are no substantial state-level regulatory protections in place for the trispot darter.

32. Due to the threats to the trispot darter, on April 20, 2010, the Center submitted a petition to FWS to list the fish as endangered or threatened under the ESA.

33. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the trispot darter. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the trispot darter may be warranted. 76 Fed. Reg. 59,836 (Sept. 27, 2011).

34. The FWS was required to make a 12-month finding as to whether listing the trispot darter is warranted by April 20, 2011, but it has not made this mandatory finding to date, a violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

    C.    <u>Yellow Lance</u>

35. The yellow lance is a large freshwater mussel that reaches six inches in length. It lives in sandy areas, rocks and mud, and slack water, and it may migrate with shifting sands. The yellow lance is native to creeks and mid-sized rivers in the coastal plains of Virginia, North Carolina, and possibly Maryland and South Carolina, though taxonomic issues are unresolved in those states, and it is likely extirpated from Maryland if it ever existed there.

36. All of the current known populations of yellow lance are at risk today: it has a

restricted range in the Chowan River; is very rare in the James, South Anna, and Rappannock rivers; is extremely threatened with extirpation in the Neuse River; and may be extirpated from the Roanoke River. Stable populations exist in the Tar River, but it recently has been wiped out from portions of the watershed and remaining populations are patchily distributed and also vulnerable to extirpation.

37. The yellow lance is sensitive to sediment pollution and also appears particularly sensitive to chemical pollutants. There are a multitude of threats confronting the species, including wastewater, urban runoff, fertilizer, and other pollution caused by a rapid increase in development and population growth. These problems will intensify as the human population continues to expand in the range of the yellow lance; for example, the human population is expected to increase by 30 percent in the next five years in the Neuse River basin, reaching nearly three million people by 2020. Pollution from industrial development, logging, confined animal feeding stations, and agriculture also degrade the habitat of the yellow lance. Additional threats include impoundments, channelization, and water withdrawals. The yellow lance is listed as "endangered" by the state of North Carolina; a "species of special concern" by the state of Virginia; "endangered" by the American Fisheries Society; and "imperiled in Virginia and "critically imperiled" in North Carolina by NatureServe.

38. Due to the threats to the yellow lance, on April 20, 2010, the Center submitted a petition to FWS to list the mussel as endangered or threatened under the ESA.

39. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the yellow lance. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the yellow lance may be warranted. 76 Fed. Reg. 59,836 (Sept. 27, 2011).

40.     The FWS was required to make a 12-month finding as to whether listing the yellow lance is warranted by April 20, 2011, but it has not made this mandatory finding to date, a violation of the ESA.  16 U.S.C. § 1533(b)(3)(B).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding for the Sickle Darter

41.     Plaintiff hereby incorporates all preceding paragraphs.

42.     FWS's failure to make a timely 12-month finding on the Center's petition to list the sickle darter as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA.  5 U.S.C. § 706(1).

### SECOND CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding for the Trispot Darter

43.     Plaintiff hereby incorporates all preceding paragraphs.

44.     FWS's failure to make a timely 12-month finding on the Center's petition to list the trispot darter as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA.  5 U.S.C. § 706(1).

### THIRD CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding for the Yellow Lance

45.     Plaintiff hereby incorporates all preceding paragraphs.

46.     FWS's failure to make a timely 12-month finding on the Center's petition to list the yellow lance as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA.  5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter Judgment for Plaintiff providing the following relief:

A.  Declare that Defendants violated the ESA and APA by failing to issue timely 12-month findings as to whether listing the sickle darter, trispot darter, and yellow lance is warranted;

B.  Order Defendants to issue, by reasonable dates certain, findings as to whether listing the sickle darter, trispot darter, and yellow lance is warranted, 16 U.S.C. § 1533(b)(3)(B);

C.  Grant Plaintiff its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D.  Provide such other relief as the Court deems just and proper.

Dated: February 18, 2015

Respectfully submitted,

/s/ Amy R. Atwood

Amy R. Atwood, DC Bar No. 470258
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Telephone: (971) 717-6401
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org

*Attorney for Plaintiff*